UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAJI LEE, | ) | CIVIL ACTION NO. 4:23-CV-793 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| B. MASON, *et al.*, | ) | |
| Defendants | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Taji Lee ("Plaintiff") is a state inmate currently confined in Phoenix State Correctional Institution ("SCI Phoenix"). In December of 2022, he filed the Complaint that is the subject of this case in the Schuylkill County Court of Common Pleas. In April 2023, the Named DOC employees were served, and they then removed this § 1983 (retaliation and access to courts) and negligence action to federal court.

In his Complaint, Plaintiff describes an unfortunate series of events which began with an investigatory cell search that occurred while he was confined in another institution, Mahanoy State Correctional Institution ("SCI-Mahanoy"). He alleges that the individuals responsible for sorting, inventorying, packing, and storing his property during that process gave away, misplaced, mixed up, and destroyed a significant amount of his personal property. The grievances he filed related to this event, coupled with filings related to two federal lawsuits, allegedly

inspired certain DOC staff members to retaliate against him. To date, seven of the fourteen individuals Plaintiff alleges were involved in these events remain unidentified.

Currently before the Court is the Named Defendants' motion requesting that Plaintiff's Complaint be dismissed for failure to state a claim upon which relief can be granted. (Doc. 12). For the reasons set forth in this opinion, Named Defendants' motion will be granted in part and denied in part, and Plaintiff, if he so chooses, will be given leave to file an amended complaint.

## II.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's claims in this case arise out of a complex tapestry of facts. To understand them, background information is required. We have provided that necessary background below, beginning with the search of Plaintiff's cell.

### A.     THE SEARCH OF PLAINTIFF'S CELL

Plaintiff is a state inmate currently incarcerated at SCI- Phoenix. In February 2021, Plaintiff was serving a sentence in state prison at SCI Mahanoy. He alleges that, on February 12, 2021, a nonparty, Security Lieutenant Dunkle, ordered an investigatory search of the cell Plaintiff shared with Kurtis Graves. (Doc. 1-2, ¶ 60). Plaintiff was relocated to the restricted housing unit, where he remained until April 21, 2021. (Doc. 1-2, p. 8, ¶ 19); (Doc. 1-2, p. 55).

Plaintiff alleges that the February 12, 2021 search of his living quarters was conducted by four Defendants. (Doc. 1-2, p. 59). He was able to identify one of those officers as Defendant Young. *Id.* He does not know the identity of the other three corrections officers present. Plaintiff alleges that on February 12, 2021, all of his (and Mr. Graves's) property was removed from their cell. (Doc. 1-2, ¶ 60).

He alleges that, after the property was removed from the cell and searched, Defendant Woods and/or Defendant Valentine "took possession of everything." *Id.*; (Doc. 1-2, p. 58).  He also alleges that, "due to the sheer volume" of property, his possessions were stored overnight in an area "accessible to staff personnel only." (Doc. 1-2, ¶ 60). He alleges that on February 13, 2021, Defendant Miller took custody of the property and inventoried it. *Id.* He believes that inventory was not thorough.

On February 18, 2021, two significant events occurred. First, Plaintiff's cellmate was released. (Doc. 1-2, ¶¶ 22-25). Second, Plaintiff was given an opportunity to inventory his property. *Id.* When he reviewed the inventory, and examined the packed property, he immediately noticed that some of his possessions were missing. The missing items generally can be attributed to three circumstances: (1) property confiscated by corrections officers; (2) property incorrectly listed on the inventory of his cellmate's property, or incorrectly given to his cellmate; and (3) property missing without explanation.

### 1.     Property Confiscated by Corrections Officers

Plaintiff concedes that some of his property was confiscated following the search. He was provided five confiscation slips documenting what items were taken, and why. Four of the five confiscation slips are attached to Plaintiff's Complaint. (Confiscated Item Receipts Nos. 425190, 425191, 425192, 425195, Doc. 1-2, pp. 36-39). Plaintiff disagreed with the confiscation of some items. He availed himself to the prison grievance process and had some success recovering some of the confiscated items. These items were addressed primarily in Grievance No. 916808.

We have summarized the disputes regarding the confiscated items presented Grievance No.  916808 in the table below. According to the grievance documents attached to Plaintiff's Complaint, Plaintiff was reimbursed a total of $80.78 for the confiscated items that could not be returned (3 pair of sweatpants, and 1 sweatshirt). (Doc. 1-2, p. 74).

| Confiscated Item/Reason | Issue | Resolution |
|---|---|---|
| **Confiscation Slip No. 425190, Doc. 1-2, p. 36** | | |
| 2. 3 Pair Sweatpants (altered) | Not addressed in detail. | Reimbursed for items on May 12, 2021. (Doc. 1-2, p. 68). |
| 3. 2 Rugs (excess) | Not addressed in detail. | Items returned on May 12, 2021. (Doc. 1-2, p. 68). |

| 4. 1 Brown Sweatshirt (altered) | A tear in the sweatshirt was repaired using a needle and thread. Plaintiff argues repair does not count as alteration. | Reimbursed for item on May 12, 2021. (Doc. 1-2, p. 68). |
|---|---|---|
| **Confiscation Slip No. 425191, Doc. 1-2, p. 37** | | |
| 1. 1 Hand Brace (altered) | Plaintiff asserts that the hand brace was not altered, thus there is no reason to confiscate them.<br><br>The grievance coordinator responded that the brace was not issued by medical. | Confiscation upheld on August 20, 2021. (Doc. 1-2, pp. 82-83). |
| 2. 2 Thermal Bottoms (excess) | Plaintiff was initially advised that these items could not be returned unless he provided proof of purchase. It was later determined that the thermal bottoms were state issued. | Confiscation upheld on August 20, 2021. (Doc. 1-2, pp. 82-83). |
| 3. 3 Knee Braces (altered) | Plaintiff asserts that the knee braces were not altered, thus there is no reason to confiscate them.<br><br>The grievance coordinator responded that the braces were not issued by medical. | Confiscation upheld on August 20, 2021. (Doc. 1-2, pp. 82-83). |
| 4. 1 Pair Shower Shoes (excess) | Plaintiff owned 2 pair of shower shoes. One shoe from each pair was confiscated, leaving him | Item returned on May 12, 2021. (Doc. 1-2, p. 68). |

| | | |
|---|---|---|
| | with a mismatched set. | |
| 5. 5 Towels (excess) | Plaintiff alleges that he had 2 brand new towels. He speculates that the "excess" noted was the result of mixing Plaintiff's property up with his cell mate's belongings.<br><br>The grievance coordinator responded that the towels would be returned if Plaintiff could provide proof of purchase. | Confiscation upheld on appeal to Superintendent and was not addressed in appeal to Chief Grievance Officer. |
| 9. 3 Thermal Tops (excess) | Plaintiff was initially advised that these items could not be returned unless he provided proof of purchase. It was later determined that the thermal tops were state issued. | Confiscation upheld on August 20, 2021. (Doc. 1-2, pp. 82-83). |
| 10. 1 White Altered T-Shirt | Not addressed in the grievances or responses. | Not addressed in the grievances or responses. |
| **Confiscation Slip No. 425192, Doc. No. 1-2, p. 38** | | |
| 2. 257 Books (unknown ownership, excess) | The prison staff takes the position that the large number of books pose a fire hazard.<br><br>Plaintiff alleges most of the books are not his and were not listed on the confiscation slip by title. He has no way of identifying which books | Forty-seven books were returned on June 16, 2021. (Doc. 1-2, p. 76). |

| | are his, but he would like his books returned. | |
|---|---|---|
| 3. 2 Pair Sweat Shorts (altered) | Shorts were made by cutting off the bottom of sweatpants. | Confiscation upheld in appeal to Superintendent and was not addressed in appeal to Chief Grievance Officer. |
| 6. 4 Small Plastic Bowls | Not addressed in detail. | One plastic bowl returned on May 12, 2021. (Doc. 1-2, p. 68). |
| **Confiscation Slip No. 425195, Doc. 1-2, p. 38** | | |
| 1. 1 Pair Earbuds (altered) | Plaintiff alleges that his earbuds were not altered. | Item returned on May 12, 2021. (Doc. 1-2, p. 68). |
| 5. 1 RCA Remote (excess) | Plaintiff says there were 2 remotes in the cell. One was his, and one belonged to his cell mate. The remote left with his property had his cell mate's ID number written on it, and the remote confiscated as excess property was his only remote. | Plaintiff was provided a remote on June 16, 2021. (Doc. 1-2, p. 76). |

### 2.    Property Found Mixed with Cellmate's Belongings

Plaintiff alleges that on February 20, 2021, a box of his property was returned by his former cellmate, Mr. Graves. (Doc. 1-2, pp. 42-43). He does not provide any detail about what was inside the box, except that it contained some of the items he previously stored in an old Mike-n-Ike bag or box. *Id.*

He also alleges that corrections officers incorrectly determined that some of his property belonged to Graves, and therefore was not listed on his inventory or his confiscation slips. This made it difficult for Plaintiff to provide the documentation required to successfully grieve his missing property.

### 3.    Property Misplaced without Explanation

In addition to the property listed on the confiscation slips, and returned by Mr. Graves, Plaintiff alleges that several other items were missing, including various food items, various toiletries, a tablet, between sixty and eighty pounds of "legal documents," prescription tinted glasses, and the power cord to his television (Plaintiff was given a power cord to an old television that did not work with his new television). (Doc. 1-2, ¶ 24).

Some of the missing items were returned. Plaintiff's missing tablet "magically reappeared" on April 21, 2021. (Doc. 1-2, ¶ 83). On June 16, 2021, the power cord to Plaintiff's television was located and returned. (Doc. 1-2, p. 78). He suggests, however, that corrections staff needlessly delayed the return of the power cord.

On July 2, 2021, Plaintiff's legal documents were found in a "locker located in Defendant Woods assigned work area." (Doc. 1-2, ¶¶ 84-85).

Plaintiff's prescription tinted glasses were never found. The Chief Grievance Officer's Office concluded on final appeal that the prison was not responsible for

replacing the glasses because Plaintiff provided no proof that those glasses were in Plaintiff's cell when his property was removed on February 12, 2021.

It is not clear whether any of the food or toiletry items were returned.

### B.   PROCEDURAL HISTORY IN THIS CASE

On December 16, 2022, Plaintiff initiated this civil rights action in the Schuylkill County Court of Common Pleas. (Doc. 1-2, p. 4). In his Complaint, Plaintiff asserts claims against a total of fourteen Defendants; seven named Defendants and seven John Doe Defendants. In portions of his Complaint Plaintiff refers to Defendants using the paragraph number where they are first mentioned. The named Defendants are:

(1)   B. Mason, the Superintendent at SCI Mahanoy (a.k.a. Defendant #4);

(2)   Correctional Officer Miller (a.k.a. Defendant #5);

(3)   Correctional Officer Young (a.k.a. Defendant #8);

(4)   Lieutenant Woods (a.k.a. Defendant #14);

(5)   J. Mahally, the Grievance Coordinator at SCI Mahanoy (a.k.a. Defendant #15);

(6)   Corrections Officer Valentine (a.k.a. Defendant #16); and

(7)   Dorina Varner, the Chief Grievance Officer for the Department of Corrections (a.k.a. Defendant #17).

All the unidentified Defendants are corrections officers. All identified and unidentified Defendants are sued in their individual and official capacities.

Plaintiff asserts three legal claims in his Complaint: (1) Negligence; (2) Retaliation; and (3) Denial of Access to Courts.

Regarding his negligence claim, Plaintiff alleges that Defendants negligently sorted, inventoried, and stored his property following the investigatory search of his cell. (Doc. 1-2, p. 56). He alleges facts suggesting this negligence resulted in both temporary and permanent losses of property.

Plaintiff alleges multiple theories regarding retaliation, involving different protected conduct (filing a civil rights lawsuit, filing a habeas petition, and filing grievances), and different adverse actions (providing adverse information to a hearing officer in a misconduct proceeding, refusing to replace lost glasses, tampering with Plaintiff's property when it was in storage, concealing Plaintiff's legal papers for months, and rejection/denial of grievances).

First, Plaintiff alleges that he has "endured harassment and retaliation" at the hands of numerous SCI Mahanoy staff members since he filed a civil rights lawsuit arising out of inadequate medical treatment for injuries he sustained when a light fixture fell on him in the prison. (Doc. 1-2, ¶ 70). Those acts included issuing falsified misconducts in which Plaintiff was sanctioned for wearing prescription tinted glasses. (Doc. 1-2, ¶ 71). He alleges another similar misconduct was issued on April 21, 2021. (Doc. 1-2, ¶ 81). He alleges that Defendant Mason intervened during the misconduct proceedings and informed the hearing examiner that

Plaintiff was not authorized to wear his glasses so that Plaintiff would be punished, purportedly in retaliation for filing *Lee v. Corizon Health* in 2016. *Id.*

Second, Plaintiff alleges that on May 12, 2021, Defendants refused to replace Plaintiff's missing prescription glasses. (Doc. 1-2, ¶ 82). The "denial" appears to be in the initial review response to Grievance No. 925811. (Doc. 1-2, p. 6). We infer based on the prior paragraph of his Complaint that Plaintiff alleges replacement was denied in retaliation for filing *Lee v. Corizon Health* in 2016.

Third, Plaintiff alleges that he was subjected to retaliation after filing Grievance Nos. 916806 and 916808 related to his missing property. (Doc. 1-2, ¶ 83). He alleges that after he filed these grievances some of his property (his tablet) reappeared while other property that was present during the February 18, 2021 inventory (his prescription glasses) disappeared. *Id.* Thus, we construe this as a claim that his property was tampered with in retaliation for filing Grievance Nos. 916806 and 916808.

Fourth, Plaintiff alleges that between sixty and eighty pounds of legal documents were deliberately concealed from Plaintiff for 137 days to retaliate against Plaintiff for filing two lawsuits: *Lee v. Kerestes* and *Lee v. Corizon Health, Inc.* (Doc. 1-2, ¶¶ 84-85).

Fifth, Plaintiff alleges that Defendants denied and/or rejected Grievance Nos. 916806 and 916808 about his property loss to retaliate against Plaintiff for *filing* those Grievances. (Doc. 1-2, ¶ 72).

Regarding his access to courts claim, Plaintiff alleges that he filed a federal habeas petition under 28 U.S.C. § 2254, and that the petition was denied at the district court level on February 24, 2020. (Doc. 1-2, ¶ 89). He alleges that as of February 12, 2021, he drafted 12 out of 15 pages of a Rule 60(b)(3) motion requesting that his habeas case be reopened. (Doc. 1-2, ¶ 93). He alleges that he was unable to submit that draft before the one-year deadline because his legal materials (including the draft of his motion) were confiscated eight days before that deadline. (Doc. 1-2, ¶ 94). He alleges that he completed his draft and submitted it on April 24, 2021. (Doc. 1-2, ¶ 95). His Motion was denied as untimely. (Doc. 1-2, ¶ 96).

As relief, Plaintiff requests that the Court:

(1) "Declare that all defendants violated plaintiff's rights under the constitution and laws of the United States thru their actions and/or omission stated in this complaint." (Doc. 1-2, p. 32).

(2) "Award compensatory damages for plaintiff's irreparable losses in the amount of $10,000 against each defendant." *Id.*

(3) "Award punitive damages for the concealment of plaintiff's personal property in the amount of $50 a day beginning 2/18/21 against each defendant." *Id.*

(4) "A jury trial on all issues triable by jury." *Id.*

(5)   "Award plaintiff any other such relief as this court deems just, proper, and equitable, and that plaintiff is entitled by law, such as compensation for cost of litigation." *Id.*

On June 18, 2023, the Named Defendants (Mason, Miller, Young, Woods, Mahally, Valentine, and Varner) filed a motion requesting that Plaintiff's Complaint be dismissed for failure to state a claim upon which relief can be granted. (Doc. 12). Named Defendants filed a supporting brief, and Plaintiff filed a brief in opposition. (Docs. 13, 17). No reply was filed. Therefore, this motion is ready to resolve.

### C.   RELEVANT BACKGROUND OF *LEE V. KERESTES* AND *LEE V. CORIZON HEALTH*

Plaintiff references the dockets in *Lee v. Kerestes* and *Lee v. Corizon Health* in his Complaint. The information summarized in this section is from Plaintiff's Complaint and from publicly available, and undisputedly authentic, documents docketed in those cases. Plaintiff's claims of retaliation and access to Courts are based on these documents, and he cites to many of these documents in his Complaint. Therefore, the documents cited in the sections below can properly be considered to resolve Named Defendants' motion to dismiss.

#### 1.   Relevant Background About *Lee v. Kerestes*, 1:13-CV-2353 (M.D. Pa.)

Plaintiff points to his habeas petition in *Lee v. Kerestes*, as the motivation for some of Defendants' retaliatory conduct and as the basis for his denial of access to

courts claim. In this petition, initiated on September 11, 2013, Plaintiff challenges a July 18, 2006 judgment of sentence entered in the Centre County Court of Common Pleas.[1] This case was stayed until state court exhaustion of the claims presented in his PCRA motions could be completed.[2]

In January 2018, the stay was lifted, and Plaintiff filed an amended petition.[3] Plaintiff raised eighteen grounds for relief.[4] Only one of the eighteen grounds is relevant to Plaintiff's access to courts claim in this case; Ground Twelve.

In Ground Twelve of his petition, Plaintiff alleged that his trial counsel was ineffective for failing to pursue a *Brady* claim alleging that the Commonwealth failed to produce a "2002 debriefing report." The PCRA Court dismissed this claim, concluding that no report dating back to 2002 exists and there is no reason to believe that trial counsel was denied any discoverable materials.[5] The Superior Court affirmed the PCRA Court's rationale for dismissing Plaintiff's *Brady* ineffective assistance claim. *Id.*

---

[1] Report and Recommendations, *Lee v. Kerestes*, No. 1:13-CV-2353-YK (M.D. Pa. Apr. 8, 2019), ECF No. 113, p. 2; (*see also* Doc. 1-2, ¶ 89) (citing Doc. 113 from the habeas case).

[2] Report and Recommendations, *Lee v. Kerestes*, No. 1:13-CV-2353-YK (M.D. Pa. Apr. 8, 2019), ECF No. 113, p. 8. The initial stay was lifted in August 2015, and Judge Mehalchick directed the government to file an answer, motion, or other response. *Id.* Respondents sought, and were granted, multiple extensions of time and the case was stayed a second time pending Plaintiff's completion of an appeal of one of his PCRA motions. *Id.*

[3] *Id.*

[4] *Id.* at pp. 9-11.

[5] *Id.* at 52-53.

After the federal habeas petition was fully briefed, then Magistrate Judge Mehalchick[6] issued a Report and Recommendations in which she concluded Plaintiff's petition should be denied and dismissed with prejudice. (Doc. 1-2, ¶ 89) (citing Doc. 113 in the habeas case).[7] Judge Mehalchick recommended that Plaintiff's *Brady* violation ineffectiveness claim (Ground Twelve), although exhausted, be dismissed as meritless.[8] She reasoned:

> [A] district court must defer to the state court's legal determination that counsel was not ineffective and may only overturn such a finding if it was contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d). Here, the state court's factual finding that no Debriefing Report existed is presumed to be correct unless Lee can rebut this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2). However, upon review of the record before the Court, Lee has not offered any concrete evidence to prove the existence of the Debriefing Report exists, or that the Commonwealth withheld such evidence despite Lee's requests for disclosure. *See United States v. Freeman*, 763 F.3d 322, 348 (3d Cir. 2014) ("The mere possibility that [*Brady* material] may exist, without more, is insufficient to establish the existence of a *Brady* violation.") (*citing United States v. Ramos*, 27 F.3d 65, 71 (3d Cir.1994) ("We think it unwise to infer the existence of *Brady* material based upon speculation alone.")). Accordingly, the state court's finding that Attorney McGlaughlin was not ineffective for declining to pursue the underlying *Brady* Violation Claim on direct appeal was not contrary to, or an unreasonable application of, *Strickland*, as counsel cannot be faulted for failing to raise a meritless claim. *See Gibson v. Beard*, No. CV 10-445, 2015 WL 10381753, at

---

[6] In February 2024, Magistrate Judge Mehalchick was sworn in as a United States District Judge.

[7] *See also*, Report and Recommendations, *Lee v. Kerestes*, No. 1:13-CV-2353-YK (M.D. Pa. Apr. 8, 2019), ECF No. 113, p. 62.

[8] Report and Recommendations, *Lee v. Kerestes*, No. 1:13-CV-2353-YK (M.D. Pa. Apr. 8, 2019), ECF No. 113, p. 51-54.

*39 (E.D. Pa. July 28, 2015), *report and recommendation adopted*, 165 F. Supp. 3d 286 (E.D. Pa. 2016), *aff'd sub nom. Gibson v. Sec'y Pennsylvania Dep't of Corr.*, 718 F. App'x 126 (3d Cir. 2017) (finding that since the alleged *Brady* material did not exist, the petitioner's *Brady* claim lacked merit and his direct appellate counsel was not ineffective for failing to pursue such a claim). Nor was the state court's conclusion based upon an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).[9]

In April 2019, Plaintiff filed a motion to supplement the record, requesting that transcripts of the investigating grand jury be added to the record to rebut the PCRA and Superior Court's conclusions that the 2002 debriefing report did not exist.[10] In May 2019, Plaintiff filed objections to Judge Mehalchick's report and recommendations. (Doc. 1-2, ¶ 89) (citing Doc. 118 in the habeas case).[11]

In February 2020, Judge Yvette Kane issued an order adopting Judge Mehalchick's recommendations and denying Plaintiff's motion to supplement. (Doc. 1-2, ¶ 89) (citing Doc. 119 in the habeas case).[12] In denying the motion to supplement, Judge Kane reasoned:

> [I]f a state court has ruled on the merits of a particular claim (which it did with regard to Petitioner's *Brady* ineffectiveness claim) a federal habeas petitioner must generally meet the requirements of Section 2254(d) "on the record that was before the state court." *See Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) (footnote omitted). Absent

---

[9] *Id.* at 53-54.

[10] Motion to Supplement, *Lee v. Kerestes*, No. 1:13-CV-2353-YK (M.D. Pa. Apr. 26, 2019), ECF No. 117.

[11] *See also*, Objections, *Lee v. Kerestes*, No. 1:13-CV-2353-YK (M.D. Pa. May 28, 2019), ECF No. 118.

[12] *See also*, Order, *Lee v. Kerestes*, No. 1:13-CV-2353-YK (M.D. Pa. Feb. 24, 2020), ECF No. 119.

certain circumstances set forth in Section 2254(e)(2), district courts cannot supplement the state court record for claims adjudicated on the merits in state court. *See Brown v. Wenerowicz*, 663 F.3d 619, 629 (3d Cir. 2011). "Otherwise, federal habeas petitioners would be able to circumvent the finality of state court judgments by establishing a new factual record" in connection with federal habeas review. *See id.* Accordingly, the Court will deny Petitioner's motion.[13]

Plaintiff sought a certificate of appealability from the Third Circuit Court of Appeals but was denied in a certified order issued in July 2020. (Doc. 1-2, ¶¶ 89, 90) (citing Docs. 120 and 122 in the habeas case).[14]

In April 2021, after he was released from the RHU, Plaintiff filed a motion to reopen the case pursuant to Rule 60(b)(3) of the Federal Rules of Civil Procedure. (Doc. 1-2, ¶ 95) (citing Doc. 123 in the habeas case).[15] In his motion, Plaintiff argued that his habeas case should be reopened because Respondents committed a "fraud on the court" when they argued in their brief that the transcripts of grand jury testimony that mention "documented" information about Plaintiff from 2002 were not presented to the jury or relied upon by the Commonwealth in any manner to convict Plaintiff. (Doc. 1-2, ¶ 104) (referencing the Commonwealth's response to his habeas petition). A five-page excerpt of the

---

[13] Order, *Lee v. Kerestes*, No. 1:13-CV-2353-YK (M.D. Pa. Feb. 24, 2020), ECF No. 119, p. 5 n.7; (*see also* Doc. 1-2, ¶ 89) (citing Doc. 119 from the habeas case).

[14] *See also*, Certified Order of USCA, *Lee v*. Kerestes, No. 1:13-CV-2353-YK (M.D. Pa. Aug. 17, 2020), ECF No. 122.

[15] Motion to Reopen, *Lee v. Kerestes*, No. 1:13-CV-2353-YK (M.D. Pa. Apr. 26, 2021), ECF No. 123.

grand jury transcript at issue is attached to the Complaint in the present action. (Doc. 1-2, pp. 95-99).

On November 8, 2021, Judge Mehalchick issued a report and recommendations in which she recommended that Plaintiff's motion be denied. (Doc. 1-2, ¶ 96) (citing Doc. 126 in the habeas case).[16] Judge Mehalchick's report and recommendations includes a discussion section, with two sub-sections. In the first sub-section, she evaluated Plaintiff's "fraud on the court" claim under Rule 60(b)(3) and concluded that it was untimely.[17] In the second sub-section, she considered Plaintiff's "fraud on the court" claim under the *Hazel-Atlas* Doctrine.[18] She found that Plaintiff's motion and briefs did not show fraud upon the court by

---

[16] Report and Recommendations, *Lee v. Kerestes*, No. 1:13-CV-2353-YK (M.D. Pa. Nov. 8, 2021), ECF No. 126.

[17] *Id.*; *see also* Fed. R. Civ. P. 60(c) (requiring that a motion under Rule 60(b)(3) be made within a reasonable time no more than one year after the entry of the judgment or order or the date of the proceeding).

[18] Although Rule 60(b)(3) allows for relief from judgment from "fraud," *Hazel-Atlas* relates exclusively to claims of "fraud upon the court." In *Hazel-Atlas*, the United States Supreme Court recognized an exception to the general rule that judgments should not be disturbed after the term of their entry has expired in cases where a fraud upon the court occurred. There is no time limit on setting aside a judgment on this ground. 11 Wight, A. Miller, & M. Kane, *Federal Practice and Procedure*, § 2870 (3d Ed. June 2024 Update). Like the standard for Motion under Rule 60(b)(3) to set aside a judgment arising from fraud, to set aside a judgment for fraud upon the Court under *Hazel-Atlas* the fraud must be established by clear and convincing evidence. *Id.* Conclusory allegations will not suffice. *Id.*

anything approaching clear and convincing evidence, and recommended that Plaintiff's request to reopen the case under *Hazel-Atlas* also be denied.[19]

On November 30, 2021, Judge Kane adopted Judge Mehalchick's recommendations, and denied Plaintiff's motion to reopen his habeas case.[20]

On December 28, 2021, the Court received untimely objections from Plaintiff.[21]

Judge Kane considered those untimely objections, issued an order overruling them, and directed that Plaintiff's habeas case remain closed.[22] In that order, Judge Kane agreed that to the extent Plaintiff presented any true Rule 60(b)(3) argument, Plaintiff's motion was untimely and "assuming *arguendo* that circumstances existed such that the Court should consider the motion timely filed, Petitioner fail[ed] to demonstrate an entitlement to relief."[23]

Judge Kane also found that "[i]n making his argument regarding fraud on the court, Petitioner's Rule 60(b)(3) motion revisits his claim regarding ineffective assistance of counsel based on counsel's failure to allege a violation of *Brady* on

---

[19] Report and Recommendations, *Lee v. Kerestes*, No. 1:13-CV-2353-YK (M.D. Pa. Nov. 8, 2021), ECF No. 126, pp. 9-11.

[20] Order Adopting Report and Recommendations, *Lee v. Kerestes*, No. 1:13-CV-2353-YK (M.D. Pa. Nov. 30, 2021), ECF No. 127.

[21] Objection, *Lee v. Kerestes*, No. 1:13-CV-2353-YK (M.D. Pa. Dec. 28, 2021), ECF No. 129.

[22] Order, *Lee v. Kerestes*, No. 1:13-CV-2353-YK (M.D. Pa. Jan. 24, 2022), ECF. No. 130.

[23] *Id.*

direct appeal, which was previously addressed by this Court in its February 24, 2020 Order denying his habeas petition, and then challenged by Petitioner on appeal. Accordingly, the Court is without jurisdiction to consider the claim."[24] She also denied Plaintiff's request for a certificate of appealability.

Plaintiff appealed Judge Kane's order denying his Rule 60(b)(3) motion to the Third Circuit. On August 9, 2022, the Third Circuit issued a certified order in which it denied Plaintiff's appeal as follows:

> Lee's motion to file his application for a certificate of appealability out of time is granted, but his request for a certificate of appealability is denied. Jurists of reason would agree, without debate, that to the extent that his Rule 60(b)(3) motion was essentially an unauthorized second or successive habeas petition, the District Court lacked jurisdiction to consider it. *See* 28 U.S.C. § 2244(b)(3)(A); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Gonzalez v. Crosby*, 545 U.S. 524, 530-32 (2005). Jurists of reason would also not debate that, to the extent that Lee presented any true Rule 60(b) arguments, the District Court did not err in concluding that it was untimely filed. *See* Fed. R. Civ. P. 60(c)(1).[25]

### 2. Relevant Background About *Lee v. Corizon Health*, 1:16-CV-2154 (M.D. Pa.)

Plaintiff points to his civil rights action, *Lee v. Corizon Health*, as the motivation for some of Defendants' retaliatory conduct. Plaintiff alleges that in

---

[24] *Id*.

[25] Certified Order of USCA, *Lee v. Kerestes*, No. 1:13-CV-2353-YK (M.D. Pa. Aug. 9, 2022), ECF. No. 138; *see also* (Doc. 1-2, ¶ 96) (referencing the Third Circuit's August 9, 2022 order).

2016, he initiated a federal lawsuit. (Doc. 1-2, ¶ 70).[26] In this lawsuit, Plaintiff named several entities (Corizon Health, Prison Health Services, Wexford Health Services, Correct Care Solution, and the Pennsylvania Department of Corrections), as well as several individuals (Tony Iannuzzi, Karen Holly, John Steinhart, Richard Roller, and John Kerestes).[27] The claims in the lawsuit relate to injuries he sustained, and the quality of medical care he received, when a ceiling light fixture in an SCI Mahanoy bathroom dislodged while Plaintiff was showering and fell on him. According to the docket in *Lee v. Corizon Health*, the parties reached a settlement in December 2022, and the parties stipulated to the dismissal of the action with prejudice in January 2023.[28]

## III.   LEGAL STANDARDS

### A.   LEGAL STANDARD FOR 12(B)(6) MOTIONS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to seek dismissal for failure to state a claim upon which relief can be granted. "The defendant bears the burden of showing that no claim has been presented."[29] To assess the sufficiency of a complaint when dismissal is sought under Rule 12(b)(6),

---

[26] *See also* Complaint, *Lee v. Corizon Health*, No. 1:16-CV-2154 (M.D. Pa. Oct. 25, 2016), ECF No. 1-2.

[27] Docket, *Lee v. Corizon Health*, No. 1:16-CV-2154 (M.D. Pa., last viewed Aug. 23, 2024).

[28] Order and Stipulation, *Lee v. Corizon Health*, No. 1:16-CV-2154 (M.D. Pa. Dec. 28, 2022 and Jan. 4, 2023), ECF Nos. 148 and 149.

[29] *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005).

a court should: (1) take note of the elements a plaintiff must plead to state a claim; (2) identify mere conclusions which are not entitled to the assumption of truth; and (3) determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of a legal claim.[30]

In order for his or her allegations to be taken as true, a plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[31] To state a claim, a plaintiff must plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]."[32] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[33] Thus, courts "need not credit a claimant's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."[34] The court also need not assume that a plaintiff can prove facts that he or she has not

---

[30] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).

[31] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[32] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556 (internal quotation marks omitted)).

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[34] *Morse v. Lower Marion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

alleged.[35] "To prevent dismissal, all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible."[36]

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[37] The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.[38] This "presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'"[39] The plausibility determination is context-specific and does not impose a heightened pleading requirement.[40]

## B.   ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment to the United States Constitution provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against

---

[35] *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

[36] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 1949).

[37] *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010).

[38] *Jordan v. Fox Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

[39] *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted) (alternations in original).

[40] *Id.* at 347.

one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.[41]

The Eleventh Amendment "imposes a jurisdictional bar against individuals *bringing suit* against a state or its agencies in federal court, or against a state official in his or her official capacity."[42] "[U]nless Congress has 'specifically abrogated' the states' sovereign immunity or a state has unequivocally consented to suit in federal court, we lack jurisdiction to grant relief in such cases."[43]

By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state. "The Supreme Court extended the Eleventh Amendment's reach to suits by *in-state* plaintiffs, thus barring all private suits against non-consenting States in federal courts."[44]

Eleventh Amendment protection, however, is not absolute. There are three primary exceptions: "(1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law."[45]

---

[41] U.S. Const. amend. XI.

[42] *Durham v. Kelley*, 82 F.4th 217, 227 (3d Cir. 2023) (emphasis added and footnotes omitted).

[43] *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 730 F.3d 291, 318 (3d Cir. 2013).

[44] *Lombardo v. Pennsylvania Dept. of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir. 2008).

[45] *Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310 (3d Cir. 2002).

### C.    STATE SOVEREIGN IMMUNITY

The Commonwealth of Pennsylvania, and its officials and employees acting within the scope of their duties, possesses immunity from suit under 1 Pa. C.S. § 2310. Under Pennsylvania law, there is a limited waiver of sovereign immunity for negligence claims against Commonwealth agencies and employees where the claim is one for which damages would be recoverable against a non-government defendant and the negligent act falls within one of ten enumerated categories for which sovereign immunity is waived.[46]

As is relevant to this case, one of those ten categories relates to the care, custody, or control of personal property. Pennsylvania's Sovereign Immunity Act waives immunity for damages caused by negligent:

> care, custody or control of personal property in the possession or control of Commonwealth parties, including Commonwealth-owned personal property and property of persons held by a Commonwealth agency, except that the sovereign immunity of the Commonwealth is retained as a bar to actions on claims arising out of Commonwealth agency activities involving the use of nuclear and other radioactive equipment, devices and materials.[47]

### D.    CLAIMS UNDER 42 U.S.C. § 1983

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or

---

[46] 42 Pa. C.S. § 8522(a).
[47] 42 Pa. C.S. § 8522(b).

immunities secured by the Constitution or laws of the United States."[48] "It is well settled that § 1983 does not confer any substantive rights, but merely 'provides a method for vindicating federal rights elsewhere conferred.'"[49] To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) a deprivation of a federally protected right; and (2) the deprivation was committed by a person acting under color of state law.[50]

Regarding the first requirement, Plaintiff, a state inmate, asserts that he was denied a federally protected right because Defendants retaliated against him for filing lawsuits and grievances, and because Defendants denied him access to the courts. We will address the requirements to prove those deprivations separately below.

It is also important to note that, under § 1983 each defendant is only liable for his or her own misconduct. Thus, it is axiomatic that a plaintiff must, for each and every claim, "show that each and every defendant [named in that claim] was 'personal[ly] involve[d]'in depriving him of his rights."[51] Personal involvement often involves direct wrongful conduct by a defendant, but in cases where the

---

[48] *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005).

[49] *Williams v. Pa. Hum. Rels. Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017) (quoting *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 104 (3d Cir. 2014)).

[50] *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

[51] *Krik v. Roan*, 1:04-CV-1990, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2005)).

defendant is a supervisor and the misconduct is committed by the supervisor defendant's subordinate, it can also be shown through evidence that: (1) the supervisor defendant personally directed their subordinate to engage in the wrongful conduct at issue; or (2) the supervisor defendant had actual knowledge and acquiesced in the wrongful conduct at issue.[52] Personal involvement must be pleaded with appropriate particularity.[53] For example, a "mere hypothesis" about a supervisor defendant's knowledge is not enough.[54] In the absence of specific allegations that a defendant played a role in depriving a plaintiff of a constitutional right, dismissal is appropriate.

### E.  RETALIATION CLAIMS UNDER 42 U.S.C. § 1983

To prevail on a retaliation claim under § 1983, an inmate must establish that: (1) he engaged in constitutionally protected conduct; (2) adverse action by prison officials sufficient to deter an inmate of ordinary firmness from exercising his constitutional rights was taken against him; and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him.[55]

To establish the requisite causal link an inmate must prove that his constitutionally protected conduct was a substantial or motivating factor for the

---

[52] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

[53] *Rode*, 845 F.2d at 1207

[54] *Payne v. Butts*, No. 22-2210, 2022 WL 16916347, at *1 (3d Cir. Nov. 14, 2022).

[55] *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

adverse action.[56] To do so, an inmate usually must prove either: (1) there was an unusually suggestive temporal proximity between the protected activity and the adverse action; or (2) a pattern of antagonism coupled with timing.[57] If neither of these showings is made, then the plaintiff must show that, from the evidence in the record, the trier of fact should infer causation.[58]

To establish a causal link based on timing alone, the alleged retaliatory action must be unusually suggestive of retaliatory motive.[59] The amount of time is usually measured in weeks or months.[60] In the employment discrimination context, periods of as little as seventeen days were found insufficient to establish causation based on timing alone.[61] These same requirements have been applied to analyze retaliation claims outside the employment context, including cases where an inmate alleges he was retaliated against by a member of the prison staff. As discussed above, however, the mere passage of time is not legally conclusive.

---

[56] *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

[57] *DeFranco v. Wolfe*, 387 F. App'x 147, 154 (3d Cir. 2010) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

[58] *Id.*

[59] *Singleton v. Shearer*, No. 1:17-CV-1027, 2019 WL 3337060, at *6 (M.D. Pa. July 25, 2019) ("When showing causation through unusually suggestive timing, the contemplated temporal proximity must be 'on the order of days or weeks.'") (quoting *Rink v. Northeastern Educ. Intermediate Unit*, 717 F. App'x 126, 134 (3d Cir. 2017)).

[60] *Id.*

[61] *See, e.g.*, *Jamison v. Wetzel*, No. 1:13-CV-2129, 2023 WL 791444, at *13 (M.D. Pa. Feb, 25, 2015).

"A court must be diligent in enforcing these causation requirements" because otherwise prison officials cognizant of the possibility that litigation might be filed against them, particularly in their individual capacity, could be chilled from taking appropriate action.[62] Diligent enforcement, however, does not create a heightened pleading standard. It merely recognizes that courts "should approach [inmate] claims of retaliation with skepticism and particular care due to the near inevitability that [inmates] will take exception with decisions of prison officials and the case with which claims of retaliation may be fabricated."[63]

### F.   ACCESS TO COURTS CLAIMS UNDER 42 U.S.C. § 1983

It is well-established that inmates have a fundamental federal right to access the courts.[64] To prevail on an access to courts claim, a plaintiff must show: (1) he "suffered an 'actual injury' in that [he] lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim"; and (2) he has "no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit."[65] A plaintiff must also demonstrate a link between his "injury" and the denial

---

[62] *Lauren W.*, 480 F.3d at 267.

[63] *Alexander v. Forr*, No. 3:CV-04-0370, 2006 WL 2796412, at *22 (M.D. Pa. Sept. 27, 2006).

[64] *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)).

[65] *Monroe*, 536 F.3d at 205 (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

of access by showing that the legal claim was lost because of the defendants' conduct.[66]

## IV.   DISCUSSION

Named Defendants argue that all claims against them should be dismissed because: (1) § 1983 and negligence claims against them in their official capacities are barred by the Eleventh Amendment; (2) Plaintiff's negligence claims assert intentional, rather than negligent conduct and therefore liability is barred by state sovereign immunity; (3) no single Retaliation claim is plausible; and (4) Plaintiff's access to courts claim is not plausible because his underlying claim was adequately addressed in the underlying litigation.

### A.   DEFENDANTS WAIVED ELEVENTH AMENDMENT IMMUNITY TO SUIT IN FEDERAL COURT

Plaintiff alleges facts demonstrating that, during the relevant period, all Defendants worked at SCI Mahanoy and were employees of the Commonwealth of Pennsylvania. (Doc. 1-2, ¶¶ 4-17). Plaintiff sues all Defendants in their official capacities. (Doc. 1-2, ¶ 18). As explained in the legal standard section, the Eleventh Amendment imposes a jurisdictional bar which makes Commonwealth Employees in their official capacity immune from suit in federal court, subject to

---

[66] *Tinsley v. Giorla*, 369 F. App'x 381 (3d Cir. 2010) ("[A] prisoner making an access-to-courts claim is required to show that the denial of access *caused* actual injury.") (emphasis added).

three primary exceptions. In their brief, Named Defendants argue that two of those exceptions are not met in this case. They do not address the third.

Regarding the first exception to Eleventh Amendment immunity, abrogation by Congress, Named Defendants assert that Congress did not abrogate states' Eleventh Amendment immunity for claims under 42 U.S.C. § 1983 or for negligence claims. (Doc. 13, pp., 23-24) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) and *Davis v. Pa. Dep't of Corr.*, No. 05-1558, 2006 WL 2927631 (W.D. Pa. Oct. 12, 2006)). They are correct. Therefore, the first exception to Eleventh Amendment immunity does not apply to Plaintiff's § 1983 or negligence claims asserted against any Defendant in their official capacity.

Regarding the second primary exception, waiver by the state, Named Defendants argue that Eleventh Amendment immunity "has not been waived." (Doc. 13, p. 24). They cite to no authority, and their argument overlooks one pertinent fact. As Plaintiff mentions in his brief, he filed this lawsuit in state court. Named Defendants removed it. "[A] state may consent to suit by making a clear declaration that it intends to submit to federal court jurisdiction."[67] "It may also waive its immunity from suit by invoking federal court jurisdiction voluntarily," as Named Defendants did here.[68] Although the Commonwealth has not statutorily

---

[67] *Lombardo*, 540 F.3d at 196 (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670, 676 (1999)).

[68] *Id.*

waived its Eleventh Amendment immunity from suit in federal Court for § 1983 claims or negligence claims, Named Defendants did waive their Eleventh Amendment immunity applicable to the official capacity claims by removing this case to federal court.

Because we find the second primary exception to Eleventh Amendment immunity applies, we need not address the third primary exception.

Accordingly, we find that Plaintiff's ability to bring suit in federal court against Named Defendants in their official capacity under § 1983 and for negligence is not barred by the Eleventh Amendment.

### B.   STATE SOVEREIGN IMMUNITY DOES NOT BAR PLAINTIFF'S CLAIMS

Named Defendants also argue that certain claims brought in Plaintiff's Complaint are barred by the Commonwealth's own sovereign immunity. "[W]hile voluntary removal waives a State's immunity from *suit* in a federal forum, the removing State retains all defenses it would have enjoyed had the matter been litigated in state court, including immunity from *liability*."[69]

Regarding Plaintiff's § 1983 claims against Named Defendants in their official capacity, these claims are not subject to state sovereign immunity defenses.[70]

---

[69] *Lombardo*, 540 F.3d at 198 (emphasis added).

[70] *Watkins v. Pa. Dep't of Corr.*, 196 A.3d 272, 274-75 (Pa. Commw. Ct. 2018) (citing *Howlett v. Rose*, 496 U.S. 356, 367-83, (1990), *Owens v. Shannon*,

Regarding the negligence claims against Named Defendants in their official capacity, a robust consensus of cases holds that this exception to the Commonwealth's sovereign immunity as to suit and liability in state court affords state inmates a remedy where their personal property is negligently damaged or lost by Commonwealth employees.[71] Named Defendants argue this waiver is inapplicable because Plaintiff asserts claims of intentional acts, and has incorrectly labeled it a negligence claim. Although we agree that the "negligence" section of Plaintiff's Complaint includes some averments of intentional conduct, his allegations regarding the sorting, packing, inventory, and storage of his property, and his allegations of items being "lost," or "misplaced," sound in negligence.

Accordingly, sovereign immunity does not bar Plaintiff's § 1983 claims against Named Defendants in their official capacity and does not bar Plaintiff's negligence claims against Named Defendants in their official or individual capacity.

---

808 A.2d 607, 610 (Pa. Commw. Ct. 2002), and *Heinly v. Commonwealth*, 621 A.2d 1212, 1215-16 (Pa. Commw. Ct. 1993)).

[71] *See Hernandez v. Corrections Emergency Response Team*, 771 F. App'x 143, 144-45 (3d Cir. 2019) (denying a state inmate's due process claim because even assuming the prison grievance process does not provide an adequate post-deprivation remedy, "Pennsylvania's state tort law would provide an adequate remedy."); *Meekins v. DOC's Graterford*, 745 F. App'x 443, 444 (3d Cir. 2018) (same); *Williams v. Stickman*, 917 A.2d 915 (Pa. Commw. Ct. 2007); *Velez v. Wetzel*, No. 651 M.D. 2020, 2024 WL 1108446, at *3-4 (Pa. Commw. Ct. Mar. 14, 2024).

### C.   PLAINTIFF'S CLAIM OF RETALIATORY REPORT TO HEARING OFFICER WILL BE DISMISSED

In April 2021 a non-party corrections officer issued a misconduct report alleging Plaintiff failed to obey an order to remove his tinted glasses. (Doc. 1-2, p. 62). A non-party hearing examiner found Plaintiff guilty of this transgression and sanctioned him to fifteen days of cell restriction effective April 30, 2021. (Doc. 1-2, p. 63). Plaintiff alleges that this sanction was "unjustified," and was imposed to retaliate against him for filing his 2016 lawsuit. (Doc. 1-2, ¶¶ 70-72, 74-80, 81).[72]

Plaintiff does not clearly identify which Defendants he asserts this claim against. Named Defendants construe all retaliation claims as being asserted against Defendants Mason, Mahally, Varner, and Woods because these are the only Defendants mentioned by name (or number) in the retaliation section of Plaintiff's

---

[72] In his Complaint, Plaintiff alleges facts suggesting that at times he was authorized to wear tinted glasses inside due to hyper-photosensitivity. (Doc. 1-2, ¶ 74). He alleges he purchased prescription glasses with tinted lenses and attached a 2017 cash slip documenting that purchase. (Doc. 1-2, p. 90). He alleges that, after filing *Lee v. Corizon Health*, various staff unidentified members at SCI Mahanoy made it difficult for him to get the necessary appointments to be able to be approved for and purchase the prescription tinted glasses for indoor use, and that once he received those glasses, he had trouble getting his authorization to wear them extended. Plaintiff also suggests that non-party medical department employees kept poor records of Plaintiff's prescription and authorization for the glasses, and falsely reported that he did not have permission to wear his glasses. As a result of this false reporting, Plaintiff was found guilty of multiple misconduct charges for refusing to remove his glasses inside. (Doc. 1-2, ¶¶ 74-79). Although Plaintiff alleges Defendants Mason, Mahally, Varner and Woods were aware of the issues related to Plaintiff's glasses, he does not include specific allegations related to their participation in it beyond a general assertion that they were involved in the grievance process. (Doc. 1-2, ¶ 71).

Complaint. (Doc. 1-2, ¶¶ 67-86). They generally argue that all of Plaintiff's retaliation claims should be dismissed because: (1) Plaintiff does not adequately allege facts to support Defendants' personal involvement; (2) denying a grievance is not adverse enough to deter an inmate of ordinary firmness from exercising their first amendment rights; and (3) Plaintiff does not allege a plausible causal link between the protected conduct and adverse action. (Doc. 13, pp. 14-18, 20-23).

As to this claim, we agree that Plaintiff does not adequately allege Defendants Mahally, Varner, or Woods were involved in imposing this sanction, and Plaintiff does not adequately allege the 2016 lawsuit motivated Defendant Mason to cause this sanction. Named Defendants' second argument, that denying a grievance is not adverse enough to deter an inmate from exercising their rights, is not relevant to this retaliation claim because the adverse action alleged is not denial of a grievance.

### 1.   Plaintiff Does Not Allege Defendants Mahally, Varner, or Woods Were Personally Involved

Plaintiff's Complaint includes few facts establishing any involvement by these Defendants.

Plaintiff alleges no facts concerning Defendant Woods' involvement in the April 2021 sanction. Therefore, Plaintiff's § 1983 retaliatory discipline claim against Defendant Woods in his official and individual capacity will be dismissed.

Plaintiff alleges Defendant Mason, Mahally, and Varner, have "all participated in numerous grievance investigations, appeals, and direct communications by request slips, regarding the harassment and retaliation imposed upon plaintiff for his wearing of tinted lense [sic] glasses to combat his medical infirmities." (Doc. 1-2, ¶ 71). Plaintiff does not allege, however, that Defendants Mahally or Varner participated in any grievance, investigation, appeal, or direct communication regarding *this* sanction. Therefore, Plaintiff's § 1983 retaliatory discipline claim against Defendants Mahally and Varner in their official and individual capacities will be dismissed.

To the extent Plaintiff alleges Defendant Mason participated in the review of this sanction or the review of grievances related to this sanction, this too is not enough on its own to plausibly demonstrate personal involvement. Plaintiff also alleges, however, that Defendant Mason contacted the hearing examiner and informed him that "Plaintiff was in fact **NOT** authorized to wear his prescription tinted lense [sic] glasses purchased years prior." (Doc. 1-2, ¶ 81) (emphasis in original). This is enough to suggest Defendant Mason, the prison superintendent, was involved.

2.    **Plaintiff Does Not Allege Enough Information to Support a Plausible Inference that Defendant Mason's Actions were Motivated by Plaintiff's 2016 Lawsuit**

A non-party corrections officer accused Plaintiff of refusing an order to remove his sunglasses while indoors. (Doc. 1-2, p. 63). According to the non-party hearing examiner, Plaintiff "denies that he refused the order to remove the sunglasses." *Id.* Defendant Mason allegedly contacted the hearing examiner and told him Plaintiff was not authorized to wear tinted glasses indoors. (Doc. 1-2, ¶ 81). A non-party from the medical department also contacted the hearing officer and corroborated Defendant Mason's statement. *Id.*; (Doc. 1-2, p. 63). The hearing examiner found Plaintiff guilty of failing to obey an order and imposed a sanction because the officer's account in the misconduct report was "more credible than [Plaintiff's] denial that he refused [the] order to remove his sunglasses." (Doc. 1-2, p. 63). For his retaliation claim against Defendant Mason to go forward, Plaintiff's Complaint must include facts demonstrating more than a "sheer possibility" Defendant Mason's conduct was motivated by Plaintiff's 2016 lawsuit. The facts alleged here do not meet this standard.

Plaintiff filed *Lee v. Corizon Health, Inc.* in September 2016, more than four- and one-half years before the April 2021 sunglasses sanction was imposed. Defendant Mason is not a named Defendant in the 2016 lawsuit, and Plaintiff does not allege she had any involvement in it. Defendant Mason did not issue the April

2021 misconduct report, and Plaintiff does not allege she directed a subordinate to issue it.[73] Although Plaintiff alleges he endured a pattern of harassment and was repeatedly disciplined for wearing his glasses after filing the 2016 lawsuit, he does not allege Defendant Mason was personally involved in that harassment or discipline aside from the incident in April 2021.[74] Therefore, Plaintiff does not allege sufficient facts to support a causal connection based on timing alone, does not allege sufficient facts to show a pattern of antagonism by Defendant Mason, and does not allege any other facts linking the 2016 lawsuit with Defendant Mason's report to the hearing examiner in April 2021. Therefore, Plaintiff's § 1983 retaliatory discipline claim against Defendant Mason in her official and individual capacity will be dismissed.

### D.   PLAINTIFF'S CLAIM OF RETALIATORY REFUSAL TO REPLACE GLASSES WILL BE DISMISSED

Plaintiff alleges that on May 12, 2021, "Defendants" "replied that (SCI) Mahanoy staff was not responsible for Plaintiff's lost or destroyed glasses." (Doc. 1-2, ¶ 82). Plaintiff appears to be referring to the initial review response to Grievance No. 925811. (Doc. 1-2, p. 60). The initial review response was completed by Defendant Woods. *Id.* (illegible signature by an Intell. Lt.); (Doc. 1-

---

[73] (Doc. 1-2, p. 62) (April 2021 misconduct report issued by C/O Perez).

[74] (Doc. 1-2, p. 61) (October 2021 misconduct report issued by C/O Flores); (Doc. 1-2, pp. 64-65) (September 2021 misconduct report issued by C/O Wojciechowald); (Doc. 1-2, p. 66) (December 2018 grievance alleging C/O Fanelli questioned Plaintiff about his eyeglasses).

2, p. 78) (appealing Defendant Woods' initial response to Grievance No. 925811). Plaintiff suggests that the prison staff's interference with his glasses was in retaliation for filing *Lee v. Corizon Health* in 2016.

Plaintiff does not clearly allege which Defendant or Defendants this claim is brought against. Named Defendants construe all retaliation claims as being asserted against Defendants Mason, Mahally, Varner, and Woods because these are the only Defendants mentioned by name (or number) in the retaliation section of Plaintiff's Complaint. (Doc. 1-2, ¶¶ 67-86). They generally argue that all of Plaintiff's retaliation claims should be dismissed because: (1) Plaintiff does not adequately allege facts to support Defendants' personal involvement; (2) denying a grievance is not adverse enough to deter an inmate of ordinary firmness from exercising their first amendment rights; and (3) Plaintiff does not allege a plausible causal link. (Doc. 13, pp. 14-18, 20-23).

We agree that Plaintiff does not adequately allege that Defendants Mason, Mahally, or Varner were personally involved in denying Plaintiff's request for replacement glasses on May 12, 2021.[75] Therefore, Plaintiff's claim of retaliatory refusal to replace his glasses against Defendants Mason, Mahally, and Varner in their official and individual capacities will be dismissed.

---

[75] Defendant Varner did affirm this decision. (Doc. 1-2, p. 84) (affirming decision on final review, decision signed by "Keri More for D. Varner"). To the extent Plaintiff intended to assert this claim as to all denials of Grievance No. 925811, the claim against Defendant Varner would be denied for the same reasons.

Regarding Defendant Woods, we agree with the caselaw that the denial of one grievance is not sufficiently averse to deter an inmate of ordinary firmness from continuing to exercise their first amendment right.[76] Even if it were, however, Plaintiff does not plausibly allege Defendant Woods was motivated to deny Plaintiff's grievance because he filed *Lee v. Corizon Health*. Plaintiff filed *Lee v. Corizon Health* more than four- and one-half years before Defendant Woods denied Grievance No. 925811. Defendant Woods was not a party to that action, and Plaintiff does not allege Defendant Woods had any involvement in the case. Plaintiff does not allege sufficient facts to support a causal link based on timing alone, does not allege facts showing a pattern of antagonism by Defendant Woods, and does not allege any other facts connecting these two events. Therefore, Plaintiff's retaliatory refusal to replace glasses claim against Defendant Woods in his official and individual capacity will be dismissed.

---

[76] *Washington v. Myers*, No. 4:22-CV-01858, 2023 WL 6797008, at *5 (M.D. Pa. Oct. 13, 2023) (dismissing a retaliation claim pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim because the "rejection or dismissal of a grievance—which happens frequently in prisons and is usually the first step in mandatory administrative exhaustion of a civil rights claim—is not an actionable adverse action for retaliation purposes.") (citing *Owens v. Coleman*, 629 F. App'x 163, 167 (3d Cir. 2015) (nonprecedential); *Porter v. Allegheny Cnty.*, No. CV 20-1588, 2023 WL 2586037, at *6 (W.D. Pa. Mar. 21, 2023); *Nifas v. Coleman*, No. 10-1486, 2012 WL 707063 (W.D. Pa. Feb. 9, 2012), *report and recommendation adopted*, 2012 WL 707035 (W.D. Pa. Mar. 5, 2012), *aff'd*, 528 F. App'x 132 (3d Cir. 2012); and *Alexander*, 2006 WL 2796412, at *3 n. 4).

**E.    PLAINTIFF'S CLAIM OF RETALIATORY PROPERTY TAMPERING WILL BE DISMISSED**

Plaintiff alleges that, after he inventoried his property on February 18, 2021, and discovered missing items he filed two Grievances. One Grievance ("Grievance No. 916806") addressed missing items, and the other Grievance ("Grievance No. 916808") addressed confiscated items. (Doc. 1-2, pp. 42-45). Both were filed on February 24, 2021. *Id.* Plaintiff alleges that after he inventoried his property, and after these grievances were filed, his property was tampered with. (Doc. 1-2, ¶ 83). He alleges that a missing item, his tablet, "magically appeared" in his footlocker the day he was released from the RHU. *Id.* He alleges that his prescription tinted glasses, which were with his property when he inventoried it on February 18, 2021, went missing. *Id.* He alleges that "Defendants" tampered with his property while he was in the RHU "in retaliation of Plaintiff's filing of grievance #916806 and 916808." *Id.*

Plaintiff does not clearly allege which Defendant or Defendants this claim is brought against. Named Defendants construe all retaliation claims as being asserted against Defendants Mason, Mahally, Varner, and Woods because these are the only Defendants mentioned by name (or number) in the retaliation section of Plaintiff's Complaint. (Doc. 1-2, ¶¶ 67-86). They generally argue that all of Plaintiff's retaliation claims should be dismissed because: (1) Plaintiff does not adequately allege facts to support Defendants' personal involvement; (2) denying a

grievance is not adverse enough to deter an inmate of ordinary firmness from exercising their first amendment rights; and (3) Plaintiff does not adequately allege a plausible causal link. (Doc. 13, pp. 14-18, 20-23). As to Named Defendants' first and third arguments, we agree. Named Defendants' second argument is not relevant to this retaliation claim because the adverse action at issue is not denial of a grievance.

Plaintiff does not allege sufficient facts to plausibly show that Defendants Mason, Mahally, Varner, or Woods tampered with Plaintiff's stored property between February 24, 2021 and April 21, 2021. Plaintiff does not allege that Defendants Mason, Mahally, Varner, or Woods had custody of or access to his stored property during this period, or that these Defendants tampered with his property. Therefore, Plaintiff's retaliatory tampering claim against Defendants Mason, Mahally, Varner, and Woods in their official and individual capacities will be dismissed.

### F. PLAINTIFF'S CLAIM OF RETALIATORY CONCEALMENT WILL BE DISMISSED

Plaintiff alleges that "Defendants" concealed between sixty and eighty pounds of Plaintiff's legal papers from him between February 12, 2021 and July 2, 2021. (Doc. 1-2, ¶¶ 84-85). Plaintiff asserts these items were concealed to retaliate against him for filing a federal habeas petition in 2013, and for filing a civil rights lawsuit in 2016. (Doc. 1-2, ¶¶ 84-85).

Plaintiff does not clearly allege which Defendant or Defendants this claim is brought against. Named Defendants construe all retaliation claims as being asserted against Defendants Mason, Mahally, Varner, and Woods because these are the only Defendants mentioned by name (or number) in the retaliation section of Plaintiff's Complaint. (Doc. 1-2, ¶¶ 67-86). They generally argue that all of Plaintiff's retaliation claims should be dismissed because: (1) Plaintiff does not adequately allege facts to support Defendants' personal involvement; (2) denying a grievance is not adverse enough to deter an inmate of ordinary firmness from exercising their first amendment rights; and (3) Plaintiff does not allege a plausible causal link. (Doc. 13, pp. 14-18, 20-23). As to Named Defendants' first and third arguments, we agree. Defendants' second argument is not relevant to this retaliation claim because the adverse action at issue is not denial of a grievance.

Plaintiff alleges that from February 12, 2021, to February 13, 2021, his property was stored in an area accessible to all staff. (Doc. 1-2, ¶ 60). This is enough to show Defendants' *possible*, but not *plausible* personal involvement. As to Defendants Mason and Woods, however, he alleges more. He alleges Defendant Mason ordered her staff to not assist Plaintiff in his efforts to secure the return of his property. (Doc. 1-2, ¶ 73). He alleges that the documents were recovered in Defendant Woods's work area. (Doc. 1-2, ¶¶ 84-85). Thus, Plaintiff did not allege enough to plausibly show personal involvement by Mahally or Varner but did as to

Mason and Woods. Nonetheless, dismissal is appropriate as to all Named Defendants because Plaintiff does not allege a plausible causal connection.

According to the Complaint, in 2013 Plaintiff filed a habeas petition naming John Kerestes as the respondent. Defendants Mahally, Varner, and Woods were not respondents in this lawsuit. To the extent Defendant Mason, who became prison superintendent at some point after the petition was filed, was involved in any aspect of Plaintiff's habeas case, this alone is not enough to suggest this lawsuit motivated her to conceal Plaintiff's legal papers.[77]

Defendants Mason, Mahally, Varner, and Woods also were not defendants in Plaintiff's civil rights lawsuit, *Lee v. Corizon Health*. Plaintiff does not allege Defendants Mason Mahally, Varner, or Woods had any involvement in the civil rights lawsuit.

Plaintiff does not allege sufficient facts to support a causal connection based on timing alone, he does not allege facts suggestive of a pattern of antagonism linking the lawsuit and the concealment of his legal papers and does not allege anything else from which a causal link could be inferred. Therefore, Plaintiff's

---

[77] *Jones v. Hood*, No. 2006 WL 1984274, at *7 (E.D. Mich. July 13, 2006) (dismissing an inmate's retaliatory transfer claim against a Warden motivated by the inmate filing a habeas petition, explaining "the rules governing habeas corpus practice require the warden of the facility to be so named and that fact therefore does not give rise to such an inference on the part of the warden); *See also*, Rules Governing Section 2254 Cases, Rule 2(a) ("if the petition is currently in custody under a state-court judgment, the petition must name as respondent the officer who has custody.").

retaliatory concealment claim against Defendants Mason, Mahally, Varner, and Woods in their official and individual capacities will be dismissed.

### G. PLAINTIFF'S CLAIM OF RETALIATORY GRIEVANCE DISMISSAL AND DENIAL WILL BE DISMISSED

Plaintiff appears to allege that "Defendants" rejected Grievance No. 916806, and rejected then denied Grievance No. 916808, to retaliate against Plaintiff for filing Grievance Nos. 916806 and 916808. (Doc. 1-2, ¶ 72).

Plaintiff does not clearly allege which Defendant or Defendants this claim is brought against. Named Defendants construe all retaliation claims as being asserted against Defendants Mason, Mahally, Varner, and Woods because these are the only Defendants mentioned by name (or number) in the retaliation section of Plaintiff's Complaint. (Doc. 1-2, ¶¶ 67-86). They generally argue that all of Plaintiff's retaliation claims should be dismissed because: (1) Plaintiff does not adequately allege facts to support Defendants' personal involvement; (2) denying a grievance is not adverse enough to deter an inmate of ordinary firmness from exercising their first amendment rights; and (3) Plaintiff does not allege a plausible causal link. (Doc. 13, pp. 14-18, 20-23). As to Named Defendants' second argument, we agree. We need not address Named Defendants' first or third arguments.

On February 24, 2021, Plaintiff filed Grievance No. 916806. Plaintiff alleges Defendant Mahally rejected it on February 26, 2021. (Doc. 1-2, ¶ 27). On March

10, 2021, Plaintiff appealed the rejection. (Doc. 1-2, p. 50). On April 1, 2021, Defendant Mason upheld the rejection because Plaintiff did not attach documents showing ownership of the missing property. (Doc. 1-2, p. 52). On April 4, 2021, Plaintiff appealed to Defendant Varner's Office. (Doc. 1-2, p. 53). After requesting and being provided legible copies, the rejection was upheld on July 19, 2021 because Plaintiff did not attach documents showing ownership of the missing property. (Doc. 1-2, p. 81). The final decision is signed by "Keri Moore for D. Varner." *Id.*

On February 24, 2021, Plaintiff filed Grievance No. 916808. (Doc. 1-2, p. 44). On February 26, 2021, Defendant Mahally rejected it because Plaintiff did not attach the relevant confiscation slips. (Doc. 1-2, p. 46). On May 4, 2021, Plaintiff resubmitted it. (Doc. 1-2, p. 44). On March 30, 2021, Defendant Mahally notified Plaintiff that the response deadline was extended ten days. (Doc. 1-2, p. 51). On May 12, 2021, Defendant Woods upheld it in part, and denied it in part. (Doc. 1-2, p. 68) (returning 2 rugs, 1 pair of shower shoes, clear ear buds, and 1 plastic bowl, and reimbursing Plaintiff for 3 pairs of sweatpants and 1 sweatshirt). On May 1, 2021, Plaintiff appealed. (Doc. 1-2, p. 71). On June 16, 2021, non-party C. Stetler upheld the initial response in part. (Doc. 1-2, p. 76) (returning books, and acknowledging a tv remote and earbuds were returned to Plaintiff). On June 30, 2021, Plaintiff appealed to Defendant Varner's Office. (Doc. 1-1, p. 79). On

August 20, 2021, it was acknowledged that some of the reasons for confiscation and some of the responses Plaintiff received were inaccurate, and that one of the responses was late. On final review it was decided that the errors did not affect the outcome and the result was upheld. (Doc. 1-2, pp. 82-83) (signed by "Keri Moore for D. Varner").

As discussed in the section addressing Plaintiff's claim of retaliatory refusal to replace his glasses, rejection or denial of a grievance is not sufficiently adverse to deter an inmate of ordinary firmness from continuing to exercise their first amendment right. Therefore, Plaintiff's retaliatory grievance dismissal and denial claim against Defendants Mason, Mahally, Varner, and Woods in their official and individual capacities will be dismissed.

### H.    ACCESS TO COURTS

Plaintiff alleges that he was separated from his legal materials, and his draft motion, between February 12, 2021 and July 2, 2021, following an investigatory search of his cell. He asserts that this period of separation prevented him from filing a timely motion under Rule 60(b)(3) to seek relief from judgment in a federal habeas case, *Lee v. Kerestes*, 13-2353.

Plaintiff does not clearly identify which Defendants he asserts this claim against. Relying on ¶ 100 of the Complaint, Defendants construe the access to courts claim as asserted against Defendants Mason, Woods, Mahally, and Varner.

(Doc. 13, p. 12). Named Defendants correctly argue that the facts alleged in this case cannot support a plausible access to courts claim.

Plaintiff plausibly alleges that by the time he was able to reconstruct his lost draft and file a motion, relief under Rule 60(b)(3) was not available to him. He omits, however, that his claim that Respondent committed "fraud on the court" was considered under *Hazel-Atlas* by Judge Mehalchick and it was recommended that it be denied. Judge Kane adopted Judge Mehalchick's recommendation, then when she overruled Plaintiff's untimely objections she also concluded that to the extent there was a true Rule 60(b)(3) issue, Plaintiff's motion would have been denied even if it was timely filed. Judge Kane also found that in some regards, the motion was an unauthorized successive petition over which the district court lacked jurisdiction. The Third Circuit denied Plaintiff a certificate of appealability and affirmed the District Court's decision. Thus, Plaintiff did not plausibly allege he lost a chance to pursue a claim with arguable merit. As demonstrated in Judge Mehalchick's Report and Recommendations, Judge Kane's Order, and the Third Circuit's certified order, Plaintiff did pursue this claim, both during habeas proceedings and in his Rule 60(b) motion, and they each determined Plaintiff's claim had no arguable merit.

Accordingly, Plaintiff's access to courts claim will be dismissed as to Defendants Mahally, Mason, Varner, and Woods in both their individual and official capacities.

## I.   LEAVE TO AMEND

If a civil rights complaint is subject to dismissal for failure to state a claim, "a district court must permit a curative amendment unless such an amendment would be inequitable or futile."[78] Although Named Defendants request dismissal with prejudice, they do not articulate any basis for this request. Nonetheless, we find that amendment of Plaintiff's § 1983 retaliation claims and access to courts claims against Named Defendants in their official capacity requesting money damages would be futile because such claims are considered a suit against the Commonwealth itself. The Commonwealth itself is not a "person" and therefore is not liable under § 1983.[79] Therefore, Plaintiff's <u>official capacity</u> claims seeking money damages under § 1983 will be dismissed with prejudice and should not be included in an amended complaint. All other claims may be amended and reasserted in an amended complaint if Plaintiff chooses to file one. This opportunity to amend, however, is not an invitation to enlarge this lawsuit by including allegations unrelated to those raised in Plaintiff's original complaint.

---

[78] *Phillips*, 515 F.3d at 245.
[79] *Watkins*, 196 A.3d at 274-75.

We also observe that the only claim remaining in this action is a state law negligence claim brought against all Defendants in their official and individual capacities. If no amended complaint is received by the deadline set forth in our order, we will decline to exercise supplemental jurisdiction over the remaining negligence claim and this case will be remanded to the Schuylkill County Court of Common Pleas pursuant to 28 U.S.C. § 1367(c)(3).

## V.    CONCLUSION

Accordingly, for the reasons set forth in this opinion, Named Defendants' motion to dismiss will be granted in part and denied in part as follows:

(1)    Plaintiff's § 1983 claims of access to courts and retaliation against Named Defendants in their <u>official</u> capacity will be dismissed <u>with prejudice</u>.

(2)    Plaintiff's § 1983 claims of access to courts and retaliation against Named Defendants in their <u>individual</u> capacity will be <u>dismissed without prejudice</u>.

(3)    Plaintiff's negligence claims will be permitted to proceed.

(4)    Plaintiff will be given leave to file an amended complaint on or before **November 6, 2024.**

Any amended complaint must be titled as an amended complaint, must contain the docket number of this case, and must list the name of each defendant in the caption. It must be complete in all respects; it must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed. It should exclude all claims dismissed with prejudice. Any amended complaint will completely replace the original complaint. If an amended complaint is filed, the original complaint will have no role in the future litigation of this case. Any amended complaint must also comply with the pleading requirements of the Federal Rules of Civil Procedure.

(5)     If no amended complaint is received by the deadline set forth in our order, we will decline to exercise supplemental jurisdiction over the remaining negligence claims and this case will be remanded to the Schuylkill County Court of Common Pleas pursuant to 28 U.S.C. § 1367(c)(3).


Date: September 27, 2024                    BY THE COURT

                                           *s/William I. Arbuckle*
                                           William I. Arbuckle
                                           U.S. Magistrate Judge